IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHELLY SUE GETTINGS,<br><br>Plaintiff,<br>v.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Case No. 1:26-cv-00076-TS-CMR<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction. For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

Plaintiff sues Defendant Northwestern Mutual Life Insurance Company ("Northwestern") for claims related to Northwestern's withholding of funds after Plaintiff cancelled a single premium immediate annuity and related investment account. Plaintiff is a 59-year woman living on Social Security Disability income. In early 2026, Plaintiff received inheritance funds. In February 2026, Plaintiff purchased a Single Premium Immediate Annuity for $50,000.00 from Northwestern and placed $40,000.00 in a related investment account. On April 23, 2026, Plaintiff submitted a cancellation on day seven of the ten-day free look period for the annuity. In normal course, the funds are returned to the customer after Northwestern processes the cancellation. Plaintiff also executed a durable power of attorney designating her son, Bryan Done, the same day. This designation specifically gave Bryan the authority to cancel the Northwestern accounts.

Prior to returning the funds, Northwestern investigated the situation and learned that on April 22, 2026, Plaintiff called a Northwestern representative, Eli Maupin, and told him that her son, Bryan had questions about the financial products.[1] During the call, Bryan took over the conversation and told Mr. Maupin that he was his mother's caretaker, that she was mentally unwell, and she could not make her own financial decisions.[2]

Northwestern asserts that one of its investigators contacted Plaintiff's other son, Tim Done, who was designated as a trusted contact on her accounts. Tim reported that he was concerned that Bryan was manipulating Plaintiff into withdrawing the funds, Bryan had pressured Plaintiff to give him money, and that he believed that Bryan was influencing Plaintiff into cancelling the financial products and had taken possession of her phone.[3] The Northwestern investigator also attested that he spoke with Plaintiff and Bryan and during these conversations, he could hear Bryan coaching Plaintiff on what to say.[4] Additionally, Tim forwarded Northwestern screenshots of text messages between himself and Plaintiff in which she states that she gave Bryan power of attorney under duress and she was the victim of elder abuse.[5]

Based on this investigation, Northwestern sought to meet with Plaintiff individually to determine whether she wanted to cancel her accounts. Plaintiff would not do so and instead filed this case. Northwestern asserts that it has continued to seek to meet with Plaintiff but she has refused.

---

[1] Docket No. 30-2 ¶ 9.

[2] *Id.*

[3] *Id.* ¶ 11.

[4] *Id.* ¶ 12.

[5] *Id.* ¶¶ 15–17.

Plaintiff initially filed this matter in Utah state court on May 12, 2026.[6] Northwestern subsequently removed the case to this Court on May 26, 2026. Thereafter, Plaintiff filed a motion for temporary restraining order, which the Court denied on the basis that the motion failed to show a likelihood of success on the merits.[7] The Court permitted Plaintiff to file an amended complaint, which she did. Thereafter, Plaintiff filed the present Motion, seeking an order from the Court requiring Northwestern to return the withheld funds with interest.

## II. LEGAL STANDARD

To obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the moving party must establish four elements: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[8] "[A] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[9] Accordingly, "the right to relief must be clear and unequivocal."[10]

---

[6] Docket No. 1-1.

[7] Docket No. 25, at 1.

[8] *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 752 (10th Cir. 2024) (quoting *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007)).

[9] *Gen. Motors*, 500 F.3d at 1226 (internal quotation marks and citation omitted).

[10] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

When a plaintiff is proceeding pro se, the Court "must construe her pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers."[11] However, the Court will not "construct a legal theory on a plaintiff's behalf."[12]

## III. DISCUSSION

"Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," the Tenth Circuit has identified "three types of specifically disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[13] Plaintiff concedes that the injunction she seeks is disfavored both because it alters the status quo and affords her substantially all the relief she could recover at trial. "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[14]

### A. Irreparable Harm

To be entitled to a preliminary injunction, Plaintiff must establish irreparable harm absent the issuance of an injunction. "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an

[11] *Whitney v. State of N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997) (internal quotation marks and citation omitted).

[12] *Id.* at 1173–74 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[13] *Schrier*, 427 F.3d at 1258–59 (internal quotation marks and citation omitted).

[14] *Id.* at 1259 (internal quotation marks and citation omitted)

injunction will be considered."[15] "Purely speculative harm will not suffice."[16] "To constitute irreparable harm, an injury must be certain, great, actual[,] and not theoretical."[17] "Merely serious or substantial harm is not irreparable harm."[18] "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[19]

Plaintiff asserts that she will suffer irreparable harm because the withheld funds are ninety percent of her liquid assets and as such, there will be harm to her health as her treating cardiologist has stated that interruption or withholding of her financial resources would likely result in detrimental outcomes to her physical health. While the Court is certainly sympathetic to Plaintiff's situation, these allegations fail to demonstrate the harm is certain and actual. As such, Plaintiffs fails to demonstrate that she will suffer irreparable harm in the absence of an injunction and therefore, fails to show entitlement to a preliminary injunction.

B. Substantial Likelihood of Success on the Merits

Even if Plaintiff were able to show irreparable harm, she fails to demonstrate a likelihood of success on the merits. Plaintiff asserts that she is substantially likely to succeed on the merits of the case. The Complaint asserts the following four claims, only two of which are substantive, against Northwestern related to their failure to return the funds: Declaratory Judgment and

---

[15] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citation omitted).

[16] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

[17] *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).

[18] *Id.* (internal quotation marks and citation omitted).

[19] *Id.* (internal quotation marks and citation omitted).

Rescission; Conversion; Breach of the Covenant of Good Faith and Fair Dealing; and Injunctive Relief.

Utah's Protection of Vulnerable Adults from Financial Exploitation Act[20] authorizes a broker-dealer or investment adviser to delay disbursements or transactions for a short period of time if they suspect that such will result in financial exploitation of an eligible adult.[21] Review of the legislative history reflects the concerns at issue here, specifically when a family member appears to be influencing an eligible adult, including coaching them over the phone.[22] The Act also provides that "[a] broker-dealer or investment adviser who, in good faith and exercising reasonable care, delays a disbursement or transaction . . . is immune from administrative or civil liability that might otherwise arise from the delay."[23]

Plaintiff argues that she is not a vulnerable adult under the Act and as such there is no basis for Northwestern to withhold the funds.[24] The Act states that an eligible adult is an individual 65 years or older or a vulnerable adult, which is defined as:

> an elder adult, or a dependent adult who has a mental or physical impairment which substantially affects that person's ability to:
> (a) provide personal protection;
> (b) provide necessities such as food, shelter, clothing, or medical or other health care;
> (c) obtain services necessary for health, safety, or welfare;
> (d) carry out the activities of daily living;
> (e) manage the adult's own resources; or

---

[20] Utah Code Ann. § 61-1-201 *et al.*

[21] *Id.* § 61-1-204.

[22] *See Hearing on S.B. 88 Before the H. Bus., Labor, & Commerce Comm.*, 2018 Gen. Sess. (Feb. 5, 2018), https://le.utah.gov/av/committeeArchive.jsp?timelineID=107800.

[23] Utah Code Ann. § 61-1-205.

[24] Docket No. 31, at 6.

(f) comprehend the nature and consequences of remaining in a situation of abuse, neglect, or exploitation.[25]

There is conflicting evidence as to whether Plaintiff is an eligible adult. She is receiving Social Security disability benefits because of mental-health related issues. Bryan told Northwestern that he was Plaintiff's caretaker because she was mentally unwell and could not make her own financial decisions. Plaintiff reports that since her husband's death in November 2022, Bryan has helped care for her on a daily basis, including with transportation, food, and appointments. However, in Tim's declaration he states that he believes that Plaintiff has the capacity to handle her own affairs.[26] Plaintiff also attached a letter from her psychiatric health care provider stating that he does not see any concerning signs or symptoms regarding Plaintiff's ability to manage her financial decisions.[27]

Additionally, because of the immunity clause, if Northwestern is acting in good faith and with reasonable care, Plaintiff's argument does not negate Northwestern's justification, especially considering the information Northwestern had at the time it delayed the disbursement.

Even if the Act does not provide Northwestern immunity for its actions related to the delay of disbursement, Plaintiff fails to establish a substantial likelihood of success on the merits. Plaintiff does not address the elements of the substantive claims in her Motion or her Reply. Instead, she makes conclusory assertions including, that because Northwestern concedes that it is holding the money, it "cannot seriously contest likelihood of success on a claim for its return."[28] Plaintiff fails to carry her burden of establishing a substantial likelihood of success on the merits

[25] Utah Code Ann. § 26B-6-201(35). The definition of dependent adult is not limited to those 65 or older. *Id.* § 26B-6-201(12).

[26] Docket No. 30-1 ¶ 11.

[27] Docket No. 27-1, at 2.

[28] Docket No. 31, at 3.

of her claims against Northwestern. Because she fails to establish both a substantial likelihood of success and irreparable harm, the Court need not address the remaining factors.[29] Accordingly, the Court denies Plaintiff's Motion.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Preliminary Injunction (Docket No. 28) is DENIED.

DATED November 25, 2026.

BY THE COURT:

TED STEWART
United States District Judge

[29] *See Winter v. Nat. Res. Def. Council, Inc.*¸ 555 U.S. 7, 22–24 (2008) (recognizing that the failure to establish one of the four preliminary injunction elements obviates the need to address the other elements).